IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

RHONDA A. OWENS,               )
                               )
            Plaintiff,         )
                               )
v.                             )   Case No. CIV-08-268-KEW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

## OPINION AND ORDER

Plaintiff Rhonda A. Owens (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 23, 1968 and was 39 years old at the time of the ALJ's decision. She completed her education through the tenth grade. Claimant's engaged in past relevant work as a nurse's aide, and an assistant manager and manager in the fast food industry. Claimant alleges an inability to work beginning June 1,

2004 due to diabetes mellitus, diabetic neuropathy, carpel tunnel syndrome, headaches, and mental limitations.

**Procedural History**

On April 17, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On September 27, 2007, Claimant appeared at a hearing before ALJ Charles Hedrick in Tulsa, Oklahoma. By decision dated November 20, 2007, the ALJ found Claimant was not disabled at any time through the date of the decision. On June 24, 2008, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) improperly rejecting the opinion on RFC by Claimant's treating physician; (2) failing to find Claimant's carpel tunnel syndrome

and loss of fingers was a severe impairment; (3) failing to find Claimant's psychological problems constituted a severe impairment; (4) engaging in a faulty credibility analysis; and (5) questions posed to the vocational expert did not contain all of Claimant's limitations.

## Treating Physician's Opinions

Claimant contends the ALJ improperly discounted the opinion of Claimant's primary treating physician, Dr. Don Schumpert. Dr. Schumpert treated Claimant for Type 2 diabetes mellitus, left posterior lymphadenopathy, hyperlipidemia, secondary amenorrhea, diabetic peripheral neuropathy, microalbuminuria, obesity, and gastroesophageal reflux disease since November of 2005. (Tr. 208-09).

On April 2, 2007, Dr. Schumpert completed a medical source statement on Claimant. He noted on the form that Claimant's symptoms were severe enough to interfere with attention and concentration and to affect her ability to tolerate work stress. Dr. Schumpert also states Claimant needs to take unscheduled breaks during an eight hour workday, has headaches, has impairments which likely produce "good days" and "bad days," and will have to be absent more than four days per month from work. Dr. Schumpert also found Claimant could not do simple grasping, pushing and pulling,

5

or fine manipulation. (Tr. 264).

Because of her ongoing headaches, Claimant was referred to Dr. Griggs, a neurologist. He related that Claimant experienced headaches in the frontal region around her eyes, temples and back of her head. Sometimes the headaches are described as extremely severe and other times more of an annoyance. (Tr. 262).

Claimant also underwent a consultative examination by Dr. Fiju Koshy on July 22, 2006. Dr. Koshy noted bilateral feet and leg pain and also hand pain. Claimant had carpal tunnel surgery on her left hand. She also lost three fingers on her right hand at the age of five years in the door of a truck. She reported that she has decreased strength, stiffness in her fingers. Claimant states she drops items more often than she used to and has tingling in her hands and arms with pain radiating into her left arm. (Tr. 184-87).

On September 25, 2007, a Medical Source Statement of Ability to Do Work-Related Activities (Mental) was completed by Kenneth W. Foster, M.A. Claimant was found to be markedly limited in her ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance, and be

punctual within customary tolerances, ability to complete a normal workday and workweek without interruptions from psychologically bas3ed symptoms and to perform at a consistent pace and without an unreasonable number and length of rest periods, ability to accept instructions and respond appropriately to criticism from supervisors, ability to respond appropriately to changes in the work setting, and ability to set realistic goals or make plans independently of others. Claimant was found to be moderately limited in her ability to remember locations and work-like procedures, ability to understand and remember very short and simple instructions, ability to carry out very short and simple instructions, ability to work in coordination with or proximity to others without being distracted by them, ability to make simple work-related decisions, ability to interact appropriately with the public, ability to ask simple questions or request assistance, ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, ability to be aware of normal hazards and take appropriate precautions, and ability to travel in unfamiliar places or use public transportation. (Tr. 280-81).

In his decision, the ALJ found Claimant suffered from the

severe impairments of diabetes mellitus and diabetic neuropathy. (Tr. 15). He also determined Dr. Schumpert's opinions reflected in the medical source statement of April 5, 2007 is not entitled to controlling weight since the opinion "contrasts sharply and is without substantial support from the other evidence of record, which obviously render it less persuasive." (Tr. 20). The ALJ then sets out the standard for weighing the opinions of treating physicians, concluding "[t]he record does not indicate what records [Dr. Schumpert] examined or what objective tests he based his opinion on.. While the undersigned has carefully considered Dr. Schumpert's opinion, it cannot be given controlling weight because it is in conflict and inconsistent with Dr. Schumpert's own treatment records, and the other substantial evidence as noted above." Id.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the

8

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

It would appear the ALJ gave Dr. Schumpert's opinion no weight. While more information on the testing Dr. Schumpert relied upon to set out the limitations on the form would have been more enlightening, the ALJ must also consider Claimant's treatment history with Dr. Schumpert and those records do indicate further limitations. For instance, in a March 21, 2006 examination, Dr. Schumpert found Claimant had leg swelling, back pain radiating into her hip and leg with numbness, tingling and weakness of both legs. He noted decreased right hand strength at the site of the amputation of her fingers. Claimant demonstrated a significant amount of jerking legs and restless legs, especially at night. (Tr. 204). Similar limitations appear throughout the record.

The record supports some weight being afforded Dr. Schumpert's opinion reflected in his statement. On remand, the ALJ shall re-evaluate his position on Dr. Schumpert's opinions and provide the appropriate weight to the same, whether controlling or some lesser level.

### Hand Impairments

Claimant also contends the ALJ should have found her carpel tunnel syndrome and loss of fingers as severe impairments. In this regard, the ALJ noted Claimant alleged disability due, in part, to her carpel tunnel syndrome. However, he concluded the last records found showed positive range of motion and adequate grip. (Tr. 15). He stated "[n]o further records were found showing complications or complaints of carpal tunnel syndrome." Id. The ALJ cites to the Physical Residual Functional Capacity Assessment completed by Dr. David Bissell on August 28, 2006 for this conclusion. (Tr. 190-99). In that assessment, Dr. Bissell found "UE have muscle tenderness, stiffness in the fingers but full passive ROM. Prior CT surgery on the left wrist with + test on current exam. Clmt missing middle, ring and little fingers on the right due to childhood injury, but has adequate grip, find and gross manipulation. Would have difficulty gripping and lifting over 10#." (Tr. 193).

This Court was equally unable to find any further reference in the record to carpal tunnel problems, other than Dr. Schumpert's assessment which found limitations on Claimant's ability to grasp and grip. However, indications are in the record of decreased strength due to finger loss. (Tr. 204). Moreover, it is unclear whether Dr. Schumpert's limitations set out in his assessment were

11

due to carpal tunnel or finger loss. As a result, the ALJ shall consider the limitation imposed by Claimant's missing fingers on remand and obtain any necessary consultative opinions in doing so.

### Mental Impairments

Claimant also contends her mental impairments should have been considered severe by the ALJ in his RFC assessment. The ALJ determined Dr. Foster's evaluation was illegible and no further treatment records for mental health treatment appeared in the medical record. (Tr. 16). He concluded Claimant's condition imposed a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 17). These findings were not supported by the medical record. Indeed, Dr. Foster's evaluation indicates marked limitation in many of these areas. On remand, the ALJ shall re-evaluate Claimant's mental impairments and obtain any necessary consultative opinions to assist in determining limitations on work activities Claimant's condition may impose.

### Credibility Determination

The ALJ essentially discounted Claimant's claims of pain except those related to her diabetes and diabetic neuropathy. However, he also found no other limitations were placed on her by

12

her treating physicians which reflects negatively on Claimant's credibility on further limitations. (Tr. 21). As discussed, Dr. Schumpert and Dr. Foster placed significant limitations on Claimant which were improperly rejected by the ALJ. On remand, the ALJ shall re-evaluate Claimant's pain complaints after properly considering these opinions and giving them their due weight.

### Questioning of Vocational Expert

The ALJ questioned the vocational expert by referencing the physical assessment by Dr. Bissell and the mental assessment of Dr. Foster. The vocational expert found Claimant to be able to perform sedentary work considering the former but no work considering the latter. Because the ALJ improperly rejected Dr. Schumpert's limitations on Claimant's ability to use her hand, his questioning of the vocational expert did not contain all of Claimant's limitations. On remand, additional questioning will be required after consideration of Dr. Schumpert's opinions.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is

**REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 22nd day of September, 2009.

_/s/ Kimberly E. West_
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE